CATHERINE HUTCHINSON *et al.* v. E. G. BENEDICT.

VARIANCE *Between Note and Mortgage — Note Controls.* Certain notes executed by the plaintiffs in error provided that, if any part of the principal and interest should not be paid at maturity, the debt should bear interest *thereafter* at the rate of 12 per cent. per annum; and the mortgages given to secure the payment of such notes contained a condition that, if default should be made in the payment of the principal and interest, or any part thereof, then the whole debt should become due and payable, with 12 per cent. interest from the date. *Held,* That the mortgages were but an incident to and a mere security for the payment of the obligations, and that the terms of the notes must control in ascertaining the amount due thereon, and not the mortgages.

*Error from Osborne District Court.*

JUDGMENT for plaintiff, *Benedict,* at the May term, 1892. Defendants, *Catherine Hutchinson* and another, come to this court. The opinion states the facts.

35 — 49 KAS.

*E. F. Robinson*, for plaintiffs in error:

Any additional burden imposed because of a default is a penalty; and so it must be regarded in this case, as viewed by the plaintiffs in error. Another principle well settled is, that penalties generally will be enforced only so far as their enforcement is equitable. These premises were accepted by the trial court, and the intimation from the bench was that resulting conclusions would have followed, except for the decision of this court in the case of *Parker v. Plymell*, 23 Kas. 402. This case in no sense controls, none of the questions here raised being before the court in that case, viz.: No bond or note complete within itself; no interest contract separately evidenced; no mortgage (whose only purpose is to secure the bond) security whatever. While no exception is taken to the general doctrine that the note and mortgage must be construed together, the principle is limited as to the purpose of such joint consideration. The mortgage clause providing 12 per cent. interest from date will not be enforced, for the following reasons: (1) Because it is in direct conflict with the conditions of the bond, in providing a greater penalty than the bond itself provides in case of default. And as the stream cannot rise higher than its source, so the mortgage can secure and enforce no more than its principal, the bond, may exact. (2) The coupon interest contracts are complete within themselves; and, so long as they are performed and taken up, an estoppel as to interest is created, behind which the holder may not go, and especially to enforce a penalty. (3) Its enforcement would be not only inequitable, but unconscionable—the purchaser having bought the paper on the basis of 7 per cent. interest, as no one would think of buying on the speculative theory of accruing benefits in the way of penalties by virtue of defaults in either interest or principal, and no claim of any such purchase is made. (4) Inserting an extra sub-clause into a mortgage, not agreed upon in fact between the parties, and not mentioned in the bond or interest contracts, and never read and understood by the mort-

gagor, is only a means of evading the law in providing damages and collection fees in case of foreclosure. True, the amount would not, in all cases, be as much as in the one at bar, yet it would often be much more, and in all cases the same principle applies.

If the view of plaintiffs in error be sustained, then what are the rights of the holder as to amount of his judgment? Noting all this court has said about legislation not changing contracts as to interest, the law of 1889 is in force as to contingent penalties, and any provision for a penalty to go into effect contingently at a future time after its enactment, as in this case, is void. This in no sense conflicts with our law that "when a rate of interest is specified in any contract, that rate shall continue until full payment is made," etc.

Nebraska has held, on the question being directly presented, *Richardson v. Campbell*, 43 N. W. Rep. 405, that where a note provided for 12 per cent. interest after due, and the legal rate in the meantime was reduced to 10 per cent., that no more than 10 per cent. was recoverable. If, however, the note had borne 12 per cent. from date, likely the change in legal rate would not have affected it. Applying the principle of the last-cited case, with the additional element in our 1889 law, that no greater rate shall accrue as a penalty for any default than is named in the bond, note, or bill, it follows that at most but 10 per cent. could be allowed after maturity; but as the stipulated rate of interest — 7 per cent. — runs by the contract only till maturity, and as the law will not support the rate attempted to be contracted for thereafter, the rate recoverable must be controlled by the law where no contract is made, to wit, 6 per cent.

The judgment, being based on the rate controlling at the time it is taken, must be the same. If the law of 1889 is valid as to reducing maximum rate to 10 per cent. on contingency of its running overdue, then the same law adding a penalty by increasing the rate for a default is also in force, and the conclusion here reached seems irresistible. The judgment should be modified accordingly.

*D. M. Thorp, S. S. Spencer, C. M. Higley,* and *C. W. Wolbert,* for defendant in error:

1. "The note and mortgage, having been made at the same time, and in relation to the same subject, are a part of one transaction, and constitute one contract, and must be construed together, as if they were parts of one instrument." *Meyer v. Graeber,* 19 Kas. 166; *Darrow v. Scullin,* 19 id. 57; *Muzzy v. Knight,* 8 id. 456.

2. The note and mortgage in this case, when construed together, are equivalent to a promise to pay interest from date until paid at 12 per cent. per annum, with a proviso that if interest and principal were promptly paid at maturity 5 per cent. interest would be remitted. *Parker v. Plymell,* 23 Kas. 402.

3. And in so construing the bond and mortgage, there is no conflict between the conditions of either, and it gives effect to the contract as made by and between the mortgagor and the mortgagee, and the mortgagee relying thereon parted with its money; and when it guaranteed the payment of said indebtedness and placed said bond and mortgage upon the market, it did so upon a basis of 12 per cent. interest; and the assignee, when purchasing said bond and mortgage, was justified in believing that if said interest or the principal, or either, was not promptly paid at maturity, he would receive 12 per cent. interest per annum from date, less the amount already paid, according to the terms of said bond and mortgage; and any other construction given to the bond and mortgage, diminishing the rate of interest, would necessarily impair the market value of said bond and mortgage, and change the contract which induced the purchaser to part with his money, and would be "inequitable and unconscionable," and in conflict with *Getto v. Friend,* 46 Kas. 24, and authorities there cited.

4. We fail to understand on what grounds counsel for plaintiffs, in error bases his assertion, viz.: "Inserting an extra sub-clause into a mortgage, . . . and in all cases the

same principle applies." The statement does not apply to this case, not being supported by any evidence, and had the facts in this case been such as to justify the statement by counsel made, we can safely say that evidence would have been introduced upon which said statements could have been based, and the evidence would then have been considered; but the assertion of counsel, unsupported by any evidence, cannot be considered by this court.

5. If our theory of this case be correct, there is no contingent penalty involved in this case, the interest being 12 per cent. from date, with the proviso that if interest was promptly paid 5 per cent. interest would be remitted; and it seems to us, under *Parker v. Plymell*, 23 Kas., *supra*, and the facts presented in this case, as shown by case-made, there can be no question but that our theory is correct, and that the statement made by counsel for plaintiff in error is not applicable.

6. Referring to the theory of counsel for plaintiffs in error relating to interest: We admit that it is very ingeniously constructed, and we question very much as to whether it could be improved upon by any attorney in the state, and would be unanswerable if supported by the evidence in this case and by the authority cited, viz., *Richardson v. Campbell*, 43 N. W. Rep. 405. However, there is no evidence in support of his theory, neither does the case of *Richardson v. Campbell*, supra, support his proposition. The proposition passed upon in that case has been adversely ruled upon by our own court in *Getto v. Friend*, 46 Kas. 24, and cases there cited, in which case it is held that any diminution of the rate of interest because of a subsequent statute would diminish the market value of the security, and hence impair the obligation of contract.

7. Inasmuch as the question of estoppel was not raised in the trial court by the answer of defendants (now plaintiffs in error) or otherwise, it cannot be considered by this court. *Dwelling-House Insurance Co. v. Johnson*, 47 Kas. 1; *Byington v. Comm'rs of Saline Co.*, 37 id. 654.

Opinion by GREEN, C.: On the 13th day of February, 1892, E. G. Benedict filed his petition in the district court of Osborne county against Catherine Hutchinson and John C. Hutchinson, to foreclose two mortgages, amounting in the aggregate to $1,500, and each falling due July 1, 1891. The principal of each debt was evidenced by a note, in the usual form for farm loans, with coupons attached, fixing the interest upon the notes at 7 per cent. per annum. The notes and coupons bore interest at 12 per cent. per annum from maturity, payable semi-annually. The language of each one of the principal notes, with reference to the interest after maturity, reads as follows:

"If any part of the principal and interest is not paid at maturity, it shall bear interest thereafter at the rate of 12 per cent. per annum, payable semi-annually, and if any interest remains unpaid 20 days after due, the principal shall become due and collectible at once without notice, at the option of the holder."

The mortgages each contain the usual conditions, and, after reciting the rate of interest in the notes and coupons, have this further clause:

"But if default be made in such payment, or any part thereof, or the taxes, or if the insurance is not kept up thereon, then this conveyance shall become absolute, and the whole shall become due and payable at once, without notice, at the option of the holder, with 12 per cent. interest per annum from the date hereof."

The interest coupons were all paid except those maturing July 1, 1891. The court below gave judgment for the amount of the notes, with 12 per cent. interest from date, less the interest coupons paid, in accordance with the condition in the mortgages.

It is urged by counsel for the plaintiffs in error that the mortgage clause providing for 12 per cent. interest from date should not be enforced, because it is in direct conflict with the condition in the notes, in providing a greater rate of interest

than is specified in the notes. It will be observed that the
condition in each one of the notes provides that if any part
of the principal or interest is not paid at maturity, it shall
bear interest *thereafter* at the rate of 12 per cent. This clause
must be construed to mean that both principal and interest
were to bear interest after maturity at the rate of 12 per cent.
per annum. This clause fixes the rate of interest after the
maturity of the principal or any portion of the interest; there
is nothing in either one of the notes which authorizes the
computation of interest upon the principal from the date of
the notes at the rate of 12 per cent. The question then pre-
sents itself as to which should govern, the plain letter of the
notes or the condition in the mortgages. It has long since
been settled by this court, and it is now the prevailing doc-
trine in this country, that the mortgage is merely an appurte-
nance to and security for the note. The latter is the evidence
of the debt; it is the obligation of the debtor to pay a speci-
fied sum of money. The mortgage is given to secure the
payment of the note, and is therefore only the mere incident
following the debt. (*Kurtz v. Sponable,* 6 Kas. 395; *Schmucker
v. Sibert,* 18 id. 104; *Burhans v. Hutcheson,* 25 id. 625.)

In the case of the *Railway Co. v. Sprague,* 103 U. S. 756,
where there appeared to be a difference between the terms of
certain bonds and the mortgage given to secure the payment
of the former, the court held that the bonds being the prin-
cipal thing, containing the obligation of the company, and the
mortgage a mere security to insure the performance of that
obligation, the terms of the bonds should control.

We think this decision of the supreme court of the United
States and the decisions of this court settle the question, and
the interest should be calculated in accordance with the terms
of the note, and the condition in the mortgages should not
govern. It follows from this conclusion that the district court
was in error in computing interest upon the entire debt at the
rate of 12 per cent. per annum from the date of the notes.
The plaintiff below should only have had judgment for the
sum of $1,552.50, with interest from the 1st day of July,

1891, at the rate of 12 per cent. per annum, as stated in the notes and coupons.

It is recommended that the judgment be so modified.

By the Court: It is so ordered.

All the Justices concurring.